UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

SAMUEL ROOSEVELT JONES,

        Plaintiff,

v.

CATHERINE BAUMAN et al.,

        Defendants.
_____/

Case No. 2:18-cv-181

Honorable Gordon J. Quist

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under Federal Rule of Civil Procedure 21, the Court is permitted to drop parties *sua sponte* when the parties have been misjoined. Pursuant to that rule, the Court will drop as misjoined Defendants Bauman, Perry, Seymore, Anderson, Castello, Sabin, Salo, Maxor, Keyes, and Unknown Party (LMF Grievance Coordinator) and dismiss Plaintiff's claims against them without prejudice.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against the remaining defendant, Defendant Zummer, for failure to state a claim.

**Discussion**

I. <u>Factual Allegations</u>

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility (LMF) in Munising, Michigan. The events about which he complains occurred at that facility and the Saginaw County Correctional Facility (SRF) in Freeland, Michigan. Plaintiff sues SRF Residential Unit Manager Unknown Zummer. Plaintiff also sues several prison officials at LMF: Warden Catherine Bauman; Sergeant A. Perry; Correctional Officers Unknown Seymore, Unknown Anderson, Unknown Castello, Unknown Sabin, Unknown Maxor, and Unknown Keyes; Prison Counselor Unknown Salo; and the LMF Grievance Coordinator identified by Plaintiff as Jane/John Doe.

Plaintiff alleges that he wrote a grievance against Defendant Zummer on August 17, 2018. In the grievance Plaintiff complained that Defendant Zummer allowed prisoners to pack up the property of other prisoners, leading to theft. A month later, Defendant Zummer placed Plaintiff in segregation on "involuntary protection" status pending Plaintiff's transfer out of SRF. Zummer informed Plaintiff that Zummer "was going to send [Plaintiff] as far up north as he could and have plaintiff fucked over for being a smart ass." (Compl., ECF No. 1, PageID.4.) On October 3, 2018, Plaintiff was transferred to LMF.

On October 7, 2018, Plaintiff was engaged in prayer in his cell. For that reason, he ignored Defendant Sabin when Sabin spoke to Plaintiff. Sabin informed Plaintiff "that he [would] not be on the yard 30 days doing that." (*Id.*) On October 10, 2018, Plaintiff had a similar exchange with Defendant Castello. The next day, because Plaintiff was on modified access with respect to the institutional grievance process, he sent an affidavit to Defendant Bauman and Defendant Unknown Grievance Coordinator asking for a grievance form. They did not respond.

2

On October 12, 2018, Plaintiff was called down to the office in Maple Unit for a review of a misconduct written by Defendant Castello. He refused. Defendant Perry came up to Plaintiff's cell to review the misconduct. Plaintiff would not listen. He put his headphones on "because he did not want to be bothered." (*Id.*, PageID.5.) Perry instructed Plaintiff to cuff up. Plaintiff complied.

Plaintiff was escorted to segregation by Defendants Perry and Sabin and others. When Plaintiff arrived at the segregation unit, he was assaulted by Defendants Seymore, Anderson and Perry while Defendant Sabin stood by and watched. Plaintiff suffered abrasions, bruises, and contusions. None of the officers contacted health services for Plaintiff.

Plaintiff was placed in a shower after the assault. Defendants Salo and Bauman made daily rounds thereafter. Plaintiff pleaded for medical attention, to no avail.

Eventually Plaintiff was placed in a segregation cell. The room temperature was freezing and he was not provided linens for 3 nights. When Plaintiff finally received his bedroll, linens and personal property, his television, beard trimmers, and soaps were missing. Plaintiff claims Defendant Maxor packed up his personal property and, therefore, is responsible for the missing items.

Plaintiff contends that Defendants have violated his First Amendment rights by retaliating against him for his grievance and litigation activity; his Eighth Amendment rights by the use of excessive force, deliberate indifference to his serious medical needs, and the inhumane conditions of confinement during his first three days in LMF segregation; and his Fourteenth Amendment due process rights by refusing his requests for grievance forms and taking his property. Plaintiff asks the Court to enter preliminary injunctive relief to prevent further assaults

by LMF staff. Plaintiff asks the Court to find facts in support of his claims. Plaintiff seeks compensatory, exemplary, and punitive damages, including $20,000.00 from each Defendant.

## II. Misjoinder Standard

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure Civil § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), and *Garcia v. Munoz*, No. 08-1648, 2007 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also Neitzke v. Williams*, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).

4

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778. When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts of . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting the improper joinder of defendants in a prisoner civil rights action undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation by making all prisoner litigants feel the deterrent effect created by liability for filing fees." *Williams v. Roberts*, 116 F.3d 1126, 1127-28 (5th Cir. 1997). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person -- say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions -- should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168-69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Correctional Center*, 136 F.3d 458, 464 (5th Cir. 1998); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule). To allow Plaintiff to proceed with improperly joined claims and defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his claims turn out to be frivolous.

### III. Standard for Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

7

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

    IV.    <u>Plaintiff's Claim Against Zummer is not Transactionally Related to his Claims against the LMF Defendants</u>

The first set of allegations contained in the complaint—first in time and first stated in the complaint—relate to Defendant Zummer. The allegations relate to Defendant Zummer's allegedly retaliatory placement of Plaintiff in administrative segregation and subsequent retaliatory transfer to LMF. According to Plaintiff's allegations, no other Defendant was involved in Plaintiff's placement in administrative segregation or transfer to LMF, and none of Plaintiff's claims against the other Defendants arose out of those events. Indeed, the remaining claims appear to be wholly unrelated to the claims against Defendant Zummer. Plaintiff's claims against Defendant Zummer became factually and legally complete when Defendant Zummer caused Plaintiff's transfer to LMF.

Defendant Zummer is not located at LMF, where the other individual defendants are located. Plaintiff does not allege that Defendant Zummer participated in the objectionable conduct of the LMF Defendants. Defendant Zummer may have caused Plaintiff to be "up north" but there are no factual allegations that support an inference that Zummer had any role in the civil rights violations that Plaintiff alleges occurred at LMF. There is no question of law or fact common to the claim against Defendant Zummer, on the one hand, and the claims against the LMF Defendants, on the other.

Although Plaintiff alleges no fact to establish any connection between his claims against Zummer and his claims against the LMF Defendants, he conclusorily alleges that Zummer is "legally responsible for . . . conspiring with LMF" and in Plaintiff's request for relief he asks

8

the Court to "find that RUM Zummer conspired with LMF to have [Plaintiff] assaulted and/or retaliated against . . . ." (Compl., ECF No. 1, PageID.3, 6.) A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Here, Plaintiff does not even allege the existence of a conspiracy. His request that the Court find one invites unsupported speculation. His allegations, even viewed in the light most favorable to Plaintiff, describe incidents discrete in time, place and participants. Plaintiff has provided no allegations establishing a link between Zummer and the other Defendants or any agreement between them. He relies entirely on a highly attenuated inference that because Zummer apparently wished to cause Plaintiff harm by sending Plaintiff "up north," any harm that befell Plaintiff "up north" was the result of tacit agreement between Zummer and the LMF Defendants. Certainly, that is not impossible. But, as the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to

9

suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680.

Plaintiff, therefore, fails to state a plausible claim of conspiracy and fails to demonstrate that his claims against the 10 LMF Defendants—who were in no way involved in the initial set of occurrences related to his placement in administrative segregation at SRF or his transfer to LMF—are properly joined.

Under Rule 21 of the Federal Rules of Civil Procedure, the Court has *sua sponte* authority to address the improper joinder; however, "[m]isjoinder of parties is not a ground for dismissing an action." Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 572-73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'"); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47; *Michaels Bldg. Co.*, 848 F.2d at 682.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

All of the actions of the LMF Defendants about which Plaintiff complains occurred during October of 2018. Plaintiff faces no risk that any claim against the misjoined Defendants will be barred by the statute of limitations. Plaintiff therefore will not suffer gratuitous harm if the improperly joined Defendants are dismissed. Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Bauman, Perry, Seymore, Anderson, Unknown Party (LMF Grievance Coordinator), Castello, Sabin, Salo, Maxor, and Keyes from this action and dismiss Plaintiff's claims against them without prejudice to the institution of new, separate lawsuits by Plaintiff against the dropped Defendants. *See Coughlin*, 130 F.3d at 1350 ("In such a case, the

court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs"); *Carney*, 2008 WL 485204, at *3 (same).

      V.      First Amendment Retaliation

Plaintiff alleges that Defendant Zummer placed Plaintiff in administrative segregation and then arranged Plaintiff's transfer to LMF because Plaintiff filed a grievance against Zummer. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

"'[A]n inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf.'" *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). Plaintiff states he wrote a grievance against Zummer because Zummer allowed prisoners to pack up the property of other prisoners. (Compl., ECF No. 1, PageID.4.) Such a grievance would appear to have merit on its face in that MDOC policy requires staff to perform that function and prohibits prisoners from performing it. MDOC Policy Directive, 04.07.112 ¶¶ V, W. It is not clear from Plaintiff's allegations, however, whether he filed the grievance on his own behalf. Nonetheless, at this stage of the proceeding, the Court will accept Plaintiff's allegation that his grievance was protected conduct.

Transfer to administrative segregation or to a distant or more restrictive prison can rise to the level of adverse action. *See Hill v. Lappin*, 630 F.3d 468, 472-75 (6th Cir. 2010). Construed in a light most favorable to Plaintiff, the Court concludes that Plaintiff's allegations satisfy the second element under *Thaddeus-X*.

Plaintiff's allegations do not suffice, however, with respect to the third *Thaddeus-X* element. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening).

Plaintiff alleges that Defendant Zummer acted adversely against Plaintiff because, in Zummer's words, Plaintiff was a "smart ass." First of all, the term "smart ass" means "wise guy; know-it all." Random House Dictionary of the English Language. "Malice" means an evil intent on the part of a person who commits a wrongful act injurious to others." *Ibid*. The courts are not here to create and enforce a politeness code in Michigan prisons. In addition, it is not at all clear that Zummer's words were a response to Plaintiff's grievance. That inference is

particularly attenuated where Plaintiff's allegations reveal that he has no qualms about blithely ignoring prison officials; he apparently files many grievances and complaint; and his grievance against Zummer and the alleged adverse actions are separated by weeks.

In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Here, Plaintiff alleges no facts from which to reasonably infer that Defendants' actions were motivated by Plaintiff's protected conduct. He merely concludes that because he filed a grievance—apparently one among many—within a few weeks of Defendant's actions, the actions must have been motivated by his grievances. The Sixth Circuit, however, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill*, 630 F.3d at 476. This is especially true where, as here, the plaintiff is a prolific filer of grievances. *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews"). Plaintiff's allegations are insufficient to state a causal connection between his grievance and his transfer. Accordingly, Plaintiff has failed to state a viable retaliation claim.

## Conclusion

In summary, Plaintiff's joinder of his claims against the LMF Defendants to his claims against Defendant Zummer lacks any arguable basis in law. Accordingly, the Court will

dismiss without prejudice all defendants other than Defendant Zummer under the Court's authority in Rule 21 of the Federal Rules of Civil Procedure. In addition, after conducting the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's claim against Defendant Zummer must be dismissed with prejudice for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2), 1915A, and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses with prejudice the action against Defendant Zummer, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

The Court will enter an Order and Judgment consistent with this Opinion.


Dated: November 30, 2018                                    /s/ Gordon J. Quist
                                                         GORDON J. QUIST
                                                   UNITED STATES DISTRICT JUDGE

15